UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK BUCKHORN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>STEINY AND COMPANY INC,<br><br>    Defendant. | Case No. 15-cv-01424-JCS<br><br>**REPORT AND RECOMMENDATION REGARDING MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 17 |

## I.   INTRODUCTION

In this ERISA enforcement action, Plaintiffs[1] bring a Motion for Default Judgment (dkt. 17) seeking entry of default judgment against Defendant Steiny and Company, Inc. ("Steiny") following the Clerk's entry of default.  Plaintiffs initially asked the Court to award unpaid fringe benefits, interest, liquidated damages, attorneys' fees, and costs.  After the undersigned magistrate judge held a hearing and ordered supplemental declarations to resolve gaps in the record, Steiny paid its past-due benefits, and Plaintiffs withdrew their request for all but liquidated damages, attorneys' fees, and costs.  *See* Campbell Supp'l Decl. (dkt. 22) ¶ 3; Proposed Judgment (dkt. 25). For the reasons stated below, the undersigned recommends that the Motion be GRANTED IN PART as to those categories of damages.

Because Steiny has not appeared in this action and has not consented to the jurisdiction of the undersigned magistrate judge, this action will be reassigned to a United States district judge for all further proceedings, including action on the recommendations of this Report.  The undersigned recommends that, although not compelled by statute, the Court require Plaintiffs to

---

[1] Plaintiffs are Jack Buckhorn and Anisa M. Thomsen as trustees of: (1) the Redwood Empire Electrical Workers Health and Welfare Trust Fund; (2) the Redwood Empire Electrical Workers Pension Trust; (3) the Joint Electrical Industry Training Program; (4) the National Employees Benefit Fund; and (4) the Redwood Empire Electrical Workers Work Recovery Fund.

1  serve a copy of this Report on Steiny in a manner consistent with Rule 5(b) of the Federal Rules of
2  Civil Procedure, such as service by mail.  Any party may file objections to these recommendations
3  no later than fourteen days after being served with a copy of this Report.  *See* 28 U.S.C.
4  § 636(b)(1).

## II.   BACKGROUND

Plaintiffs are trustees of several employee benefit funds for electrical workers, all of which are Taft-Hartley funds as defined by 29 U.S.C. § 186 and employee pension benefit plans as defined by 29 U.S.C. § 1002(1)−(2).  Compl. (dkt. 1) ¶¶ 2−3.  Steiny is an employer operating in Solano County, California.  *Id.* ¶ 4.  In 1978, Steiny signed a letter of assent agreeing to be bound by the "Inside" labor agreement (the "Inside Agreement") between the Redwood Empire Chapter of the National Electrical Contractors Association and IBEW Local 551.  *See id.* ¶ 5 & Ex. 1.  The Complaint alleged that Steiny owed contributions that were due December of 2014 through February of 2015, as well as interest and liquidated damages for those months, and also liquidated damages for untimely contributions for the months of June, July, and October of 2014.  *Id.* ¶ 10.  The Complaint also alleged on information and belief that addition funds were due for the period from March 1, 2015, to the filing of the Complaint on March 27, 2015, and stated Plaintiffs' intent to "amend the complaint at or before the time of judgment" to set forth additional damages resulting from Steiny's continued breach of its obligations.  *Id.* ¶¶ 12−13.  Two versions of the Inside Agreement govern the months at issue: one valid from June 1, 2011 through May 31, 2015 (the "2011 Agreement"), and the other valid from June 1, 2015 through May 31, 2017 (the "2015 Agreement").[2]

Plaintiffs' Motion sought unpaid contributions and interest for only the months of June and September of 2015.  Mot. (dkt. 17-1) at 2; Marshall Decl. (dkt. 17-2) ¶ 6.  The Motion also sought liquidated damages for untimely or unpaid contributions for June, July, and October through December of 2014 and January through September of 2015.  Marshall Decl. Ex. D; Thomsen

---

[2] The 2011 and 2015 versions of the Inside Agreement appear in multiple places in the record, including as Exhibits A and B, respectively, of the Supplemental Declarations of Sue Campbell (dkt. 22), Anisa Thomsen (dkt. 23), and Alice Marshal (dkt. 24).

United States District Court
Northern District of California

Decl. (dkt. 17-3) Ex. C.  The Motion did not clearly identify the trusts to which Steiny owed contributions and damages.  *See generally* Mot.  The undersigned noted at the hearing that some of the trusts identified in the supporting documentation did not appear to correspond to any plaintiff in this action, and instructed Plaintiffs to file supplemental materials addressing that and other issues.

Plaintiffs filed three supplemental declarations after the hearing, withdrawing their request for contributions (as Steiny has now paid them) and interest, and seeking only liquidated damages, attorneys' fees, and costs.  Campbell Supp'l Decl. ¶ 3.  Plaintiffs also no longer seek damages related to vacation benefits because there is no provision for liquidated damages based on those contributions.  *Id.* ¶ 4.  Anisa Thomsen's supplemental declaration discusses Labor-Management Cooperation Committee ("LMCC") contributions and National Employees Benefit Fund ("NEBF") contributions, primarily focusing on the former.  Thomsen Supp'l Decl. ¶¶ 4−5.  Alice Marshall's supplemental declaration discusses health and welfare contributions, pension contributions, Local Joint Apprenticeship Training contributions, and NEBF contributions.  Marshall Supp'l Decl. ¶¶ 4−9.

In assenting to the Inside Agreement, Steiny agreed to contribute to a number of employee benefit funds and to comply with their corresponding trust agreements.  First, Steiny committed to make contributions to the NEBF and to be bound by the Restated Employees Benefit Agreement and Trust (the "NEBF Agreement").  *See* 2011 Agreement § 6.01 ("The individual Employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust."); 2015 Agreement § 6.01 (same).  The NEBF Agreement provides for liquidated damages of "up to twenty percent (20%) of the amount found to be delinquent" to compensate Plaintiffs for collection costs related to delinquent NEBF contributions.  Marshall Supp'l Decl. Ex. D (excerpt of the NEBF Agreement) § 6.9.2.[3]

For health and welfare benefits, Steiny agreed to make contributions to the Redwood

---

[3] Some of the liquidated damages provisions at issue also provide for interest as a component of liquidated damages.  *See, e.g.*, Marshall Supp'l Decl. Ex. D § 6.9.3.  Because Plaintiffs neither include such interest in their supplemental calculations (Marshall Decl. Ex. I) nor seek it in their most recent proposed judgment (dkt. 25), this Report does not address those provisions in detail.

Empire Electrical Workers' Health and Welfare Trust Fund and to be bound by the Redwood Empire Electrical Workers' Health and Welfare Agreement and Trust (the "H&W Agreement"). *See* 2011 Agreement § 6.02; 2015 Agreement § 6.02.  That agreement calls for 20% liquidated damages if the trust sues an employer to recover delinquent contributions.  Marshall Supp'l Decl. Ex. E (excerpt of the H&W Agreement) § 47.  The H&W Agreement also includes a separate liquidated damages provision, not specific to recovery through a lawsuit, which calls for the greater of $350 or 10% of the amount due, with the 10% option only available for contributions that are more than five days late.  *Id.* § 46.

For pension benefits, Steiny agreed to make contributions to the Redwood Empire Electrical Workers' Pension Trust Fund and to be bound by the Redwood Empire Electrical Workers' Pension Agreement and Trust (the "Pension Agreement"), which includes dual liquidated damages provisions substantially similar to those of the H&W Agreement discussed above.  2011 Agreement § 6.03 (agreeing to be bound by the Pension Agreement); 2015 Agreement § 6.03 (same); Marshall Supp'l Decl. Ex. F (excerpt of the Pension Agreement) §§ 5.22, 5.23.

For apprenticeship training funds, Steiny agreed to make contributions to a Local Joint Apprenticeship Training Trust and to be bound by the Local Joint Apprenticeship Training Trust Fund Agreement (the "JAT Agreement").  2011 Agreement §§ 5.15−5.16; 2015 Agreement §§ 5.15−5.16.  The JAT Agreement provides for liquidated damages of the greater of $10 per delinquency or 20% of the amount due.  Marshall Supp'l Decl. Ex. G (excerpt of the JAT Agreement) art. III § 6.

The Administrative Office for the Redwood Empire Electrical Workers collects health and welfare, pension, and JAT contributions, as well as liquidated damages for delinquent NEBF contributions.  Marshall Supp'l Decl. ¶ 5.  Based on the various default provisions discussed above, and because employers generally pay either all or none of the four contributions owed for a given month, the administrative office conservatively assesses liquidated damages at the greater of $350 or 10% of the amount due per month—the former being authorized for delinquent health and welfare or pension payments, and the latter being the lowest percentage allowed by any of the

1   trusts at issue (specifically, the percentage allowed for health and welfare or pension benefits, and
2   within the 20% allowed for NEBF or JAT benefits). *See id.* ¶ 9. Plaintiffs therefore seek
3   $6,261.02 in liquidated damages for delinquent contributions to these funds, based on eight
4   months assessed at $350 each and six months assessed at 10% of the amount due. *Id.* ¶ 10 &
5   Ex. I.

6   Steiny also "agree[d] to participate in a [local] Labor-Management Cooperation Fund," and
7   to abide by its "Agreement and Declaration of Trust." 2011 Agreement §§ 8.01−8.03; 2015
8   Agreement §§ 8.01−8.03. The Agreement and Declaration of Trust ("LMCC Agreement")
9   provides for liquidated damages of the greater of 7% of the amount due or $10 for delinquent
10  contributions. Thomsen Supp'l Decl. Ex. D (excerpt of the LMCC Agreement) art. III § 3.
11  Plaintiffs currently seek $100 in liquidated damages for untimely LMCC contributions, at $10 per
12  month for ten delinquent months. Thomsen Supp'l Decl. ¶ 6 & Ex. F.

13  Plaintiffs also seek $4,543.50 in attorneys' fees for 23.3 hours of work by their counsel
14  Sue Campbell at a rate of $195 per hour. Campbell Decl. (dkt. 17-4) ¶¶ 1−2. Campbell's
15  declaration attributes six hours of work to filing the present Motion and includes itemized billing
16  statements for the remainder of the work claimed. *Id.* ¶ 2 & Ex. A. Plaintiffs do not claim
17  additional attorneys' fees for work undertaken to remedy the defects identified at the hearing
18  through the submission of supplemental declarations. *See id.* Plaintiffs request $420 in costs,
19  consisting of the $400 filing fee and $20 for service of process. *Id.* ¶ 3 & Ex. A.

20  **III.   ANALYSIS**
21      **A.   Adequacy of Service of Process**
22  As a preliminary matter, where entry of default judgment is requested, the Court must
23  determine whether service of process was adequate. *Bank of the West v. RMA Lumber Inc.*, No.
24  C 07-06469 JSW, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008). A party may serve a
25  corporation "following state law for serving a summons in an action brought in courts of general
26  jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ.
27  P. 4(e)(1); *see also* Fed. R. Civ. P. 4(h)(1)(A) (authorizing service of process on corporations "in
28  the manner prescribed by Rule 4(e)(1) for serving an individual"). Under California law, a

1  summons can be served on a corporation by delivering a copy of the summons and complaint to
2  the person designated as agent for service of process. Cal. Code Civ. Proc. § 416.10(a). The
3  proof of service indicates that Plaintiffs properly served the summons and complaint on Steiny by
4  personal service. *See* Certificate of Service (dkt. 10).

### B.     Entry of Default Judgment

Plaintiffs have applied for a default judgment in this action on the basis that Steiny has failed to plead or otherwise defend or appear after valid service. Under Rule 55(b)(2) of the Federal Rules of Civil Procedure, the Court may enter a default judgment once the Clerk, under Rule 55(a), has entered the party's default based upon a failure to plead or otherwise defend the action. The Court is free to consider a wide range of factors in deciding whether to enter a default judgment, including: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471−72 (9th Cir. 1986); *see also* Wright & Miller, Federal Practice and Procedure, Civil § 2685.

Here, where Steiny has failed to respond to Plaintiffs' Complaint and Summons, the principal concerns are whether Plaintiffs have pled a valid claim and whether they are entitled to the amount of damages they seek.[4]  "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Power Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).  This Report addresses only the claims remaining after Plaintiffs' post-hearing submissions.

---

[4] Several of the other factors are satisfied by reason of Steiny's failure to appear. Plaintiff would be prejudiced by a decision not to grant default judgment because Plaintiff has no other remedy. Steiny has made no showing of excusable neglect or of a dispute as to material facts. And although policy favors a decision on the merits, that is not possible where, as here, Steiny has not appeared and there is no indication that he intends to.

### 1. Liquidated Damages Addressed in Anisa Thomsen's Supplemental Declaration

Anisa Thomsen's supplemental declaration addresses Plaintiffs' claim for $100 in liquidated damages related to Steiny's untimely Labor-Management Cooperation Committee ("LMCC") contributions. *See* Thomsen Supp'l Decl. ¶¶ 4−6 & Exs. D−F.

The undersigned advised Plaintiffs at the hearing that they must explain how each fund for which they seek damages relates to a plaintiff in this action. As discussed above, Steiny committed to pay those contributions to the "Labor-Management Cooperation Fund." 2011 Agreement §§ 8.01−8.03; 2015 Agreement §§ 8.01−8.03. The named plaintiffs in this action are identified as trustees of a number of trusts, but not as trustees of a "Labor-Management Cooperation Fund" or anything that could be inferred to meet that description. *See* footnote 1, *supra*. According to Thomsen, "[t]he Redwood Chapter of the National Electrical Contractor's Association (NECA) collects [the LMCC] benefits." Thomsen Supp'l Decl. ¶ 4. But even assuming for the sake of argument that NECA has a substantive right to recover those contributions and related liquidated damages, rather than merely an administrative role in collecting them, NECA is also not a plaintiff in this action. None of Plaintiffs' initial or supplemental submissions address this issue in any way.[5] Because Plaintiffs have not met their burden to show a right to recover liquidated damages related to LMCC contributions, the undersigned recommends that their Motion be DENIED as to those damages.

### 2. Liquidated Damages Addressed in Alice Marshall's Supplemental Declaration

Alice Marshall's supplemental declaration addresses liquidated damages for NEBF, health and welfare, pension, and joint apprenticeship training contributions. The first three of those categories correspond to trusts for which the named plaintiffs are identified as trustees. Although less clear than the others, and not directly addressed in Plaintiffs' filings, it also reasonable to infer in the present context that the Joint Electrical Industry Training Program—one of the entities for which Plaintiffs are designated as trustees—is the "Local Joint Apprenticeship Training Trust"

---

[5] At the hearing, Plaintiffs' counsel suggested that certain plans had been designated as the "collection plans" for all of the others. The undersigned instructed Plaintiffs to address that issue in their supplemental filings, but Plaintiffs failed to do so.

referenced at sections 5.15 and 5.16 of both the 2011 and 2015 versions of the Inside Agreement. The undersigned therefore finds that Plaintiffs are entitled to collect each category of liquidated damages addressed in Marshall's supplemental declaration.

For eight of the months at issue—June, November, and December of 2014, and January, February, March, April, and September of 2015—Plaintiffs seek a flat damages rate of $350 per month. Marshall Supp'l Decl. Ex. I. That rate is authorized by both the H&W Agreement and the Pension Agreement as liquidated damages for untimely contributions. H&W Agreement § 46; Pension Agreement § 5.22(b).[6] Plaintiffs have submitted transmittals for each of those months showing contributions due to the health and welfare and pension funds. Marshall Supp'l Decl. Ex. H. Marshall's supplemental declaration and an attached spreadsheet also state that Steiny did not pay the contributions for the months at issue on time. *Id.* ¶ 10 & Ex. I. The undersigned therefore concludes that the H&W Agreement and the Pension Agreement authorize the damages claimed for those months.

For the six remaining months—July and October of 2014, and May through August of 2015—Plaintiffs claim 10% of the amount owed, which exceeds $350 for each month. *See id.* Ex. I. The undersigned has reviewed the transmittals at issue and confirmed that the contributions assessed conform to the rates set by the Inside Agreement and relevant wage schedules. *See* 2011 Agreement sched. A; 2015 Agreement sched. A ;Campbell Supp'l Decl. Ex. C (wage schedules showing rates effective for the year-long periods beginning June 1, 2014 and June 1, 2015); Marshall Supp'l Decl. Ex. H (transmittals). Each agreement at issue authorizes liquidated damages of at least 10%. *See* NEBF Agreement § 6.9.2 (liquidated damages of "up to twenty percent" of the amount due); JAT Agreement (greater of $10 or 20% of the amount due); H&W Agreement § 46 (greater of $350 or 10% of the amount due); Pension Agreement § 5.22 (same).[7]

---

[6] The NEBF Agreement and the JAT Agreement do not provide for a $350 flat rate of liquidated damages. For these months, Plaintiffs essentially seek recovery under only the H&W Agreement and the Pension Agreement, forgoing any remedies they might have under the NEBF Agreement and the JAT Agreement. Further, although the H&W Agreement and the Pension Agreement could perhaps be construed as each separately authorizing $350 per month, for a total of $700 per month, Plaintiffs seek only a single $350 assessment for each month of untimely payments.

[7] As discussed in the following paragraph, the H&W Agreement and the Pension Agreement

8

Marshall's supplemental declaration and an attached spreadsheet state that Steiny did not pay the contributions for the months at issue on time. *Id.* ¶ 10 & Ex. I. The undersigned therefore concludes that the agreements authorize the damages claimed for those months.

Plaintiffs have not addressed the interplay between the flat $350 rate for certain months and either (a) the provisions of the H&W Agreement and the Pension Agreement calling for 20% liquidated damages if those plans sue to recover delinquent contributions, *see* H&W Agreement § 47; Pension Agreement § 5.23; or (b) the ERISA provision authorizing liquidated damages "equal to the greater of— (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law)," 29 U.S.C § 1132(g)(2)(C).[8] The Court need not resolve this tension, because even assuming for the sake of argument that Plaintiffs are limited to liquidated damages equaling 20% of the untimely contributions, the total amount that Plaintiffs seek is well below that threshold. Setting aside the LMCC contributions that Plaintiffs have not demonstrated any right to recover, the untimely contributions at issue total $52,465.66. *See* Marshall Supp'l Decl. Ex. I. Twenty percent of that sum is $10,493.13—significantly more than the $6,261.02 that Plaintiffs seek for these contributions. *See id.* The undersigned therefore concludes that even if these statutory or contractual provisions limit Plaintiffs' liquidated damages to 20% of the untimely contributions, Plaintiffs are still entitled to recover the amount they seek.

One final issue is that several of the months for which Plaintiffs now seek damages were not mentioned in the Complaint, specifically November of 2014 and June through September of 2015. *Compare* Compl. ¶¶ 10, 12, *with* Campbell Supp'l Decl. Ex. I. The Complaint did, however, explicitly contemplate that Plaintiffs would seek to amend their pleading to account for additional damages incurred after filing the Complaint in March of 2015. Compl. ¶ 13. Although Plaintiffs have not actually sought leave to amend, courts often allow damages incurred after the initiation of an action to be included in a default judgment, which would account for all but

---

also include provisions authorizing liquidated damages of 20% of the amount due if the plans sue to collect a debt.
[8] Steiny, of course, by failing to appear and defend, has not addressed this or any other issue.

November of 2014. *See, e.g.*, *Bd. of Trs. of the Sheet Metal Workers Health Care Tr. of N. Cal. v. B.D. Bridon, Inc.*, No. C-95-1240 MHP, 1995 WL 573701, *3 (N.D. Cal. Sept. 19, 1995) (explaining that denying "liquidated damages for contributions that became delinquent after suit was filed and remained unpaid" would "force trust funds to file successive lawsuits for each new delinquent contribution and would frustrate ERISA's goals of deterring violations and compensating funds for such violations"). Here, for the reasons stated in *B.D. Bridon*, and taking into account that the Complaint put Steiny on notice of Plaintiffs' intent to amend to seek additional damages, that Plaintiffs served their present Motion seeking damages for those months on Steiny (*see* dkt. 18), Plaintiffs' evidence demonstrating their right to recover for those months, and the undersigned's recommendation that Plaintiffs be required to serve this Report on Steiny to allow a final opportunity to respond, the undersigned concludes that requiring formal amendment of the Complaint to add the months not initially included therein would not serve any practical purpose. The undersigned therefore recommends that the Court deem the Complaint amended to seek liquidated damages for all of the months discussed above, including both November of 2014 and the months after Plaintiffs initiated this action.

### 3. Attorneys' Fees

Attorneys' fees incurred in actions brought to recover unpaid contributions are available under 29 U.S.C. § 1132(g)(2)(D). Federal courts have adopted the "lodestar" method for calculating the amount of reasonable attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar figure is the product of the hours counsel reasonably spent on the case and a reasonable hourly rate. *Id.* To determine whether Plaintiffs' claimed hours are reasonable, the Court must review attorneys' time records to determine whether the hours are adequately documented in a manner that can be properly billed directly to clients. *Id.* at 434. The Court must assess whether the hours claimed are vague, block-billed, excessive and/or duplicative, or whether the hours in their entirety must be reduced because of limited success in the action. *See Navarro v. General Nutrition Corp.*, 2005 WL 2333803, at *4 (N.D. Cal. Sept. 22, 2005). Decisions by other courts regarding the reasonableness of the rate sought may provide evidence to support a finding of reasonableness. *See Widrig v. Apfel*, 140 F.3d 1207, 1210 (9th Cir. 1998) (holding that

1   rate set by district court based, in part, on the rate awarded to same attorney in another case, was
2   reasonable).
3         Plaintiffs submitted a declaration by their counsel Sue Campbell detailing her time spent
4   seeking to recover the contributions at issue and associated interest and damages.  *See generally*
5   Campbell Decl.  Plaintiffs seek $4,543.50 in attorneys' fees for 23.3 hours of work at a rate of
6   $195 per hour.  *See id.* ¶¶ 1−2.  Campbell states that she spent six hours preparing and filing the
7   present Motion, and details the remainder of her time on the case in billing records broken down
8   in 0.05-hour intervals.  *Id.* ¶ 2 & Ex. A.  Plaintiffs do not seek attorneys' fees for time spent
9   preparing supplemental filings to remedy the deficiencies of their original submission.
10        The billing records include time spent seeking to collect the debt outside the context of the
11  present action.  *See, e.g.*, *id.* Ex. A at ECF p. 5 (entries for time spent in January of 2015 filing
12  liens on Steiny's bonds).  Although ERISA itself does not authorize recovery of such fees, *see,*
13  *e.g.*, *Emp. Painters' Tr. v. Cascade Coatings*, No. C12-0101 JLR, 2014 WL 526776, at *10 (W.D.
14  Wash. Feb. 10, 2014) (limiting statutory attorneys' fees to those incurred in the course of the
15  ERISA enforcement action, excluding fees associated with "state law bond claims"), the
16  agreements at issue here include broader attorneys' fees provisions that encompass all of the fees
17  Plaintiffs seek.  *See, e.g.*, NEBF Agreement § 6.9.5 (authorizing the plan to recover "all costs,
18  audit expenses, actuarial expenses, and attorneys' fees incurred by the Trustees in enforcing the
19  provisions hereof, whether by litigation or otherwise").
20        The undersigned has reviewed Campbell's billing records and finds her time expended on
21  the matter to be reasonable.  Campbell's billing rate of $195 per hour also falls well within the
22  range that courts have approved in similar cases.  *See, e.g.*, *Carpenters Pension Trust Fund for N.*
23  *Cal. v. Lindquist*, No. 10-3386 SC, 2011 WL 4543079, at *2 (N.D. Cal. Sept. 29, 2011) (finding
24  "an hourly rate of between $225 and $275 for attorney time" to be reasonable); *Bd. of Trs. of*
25  *Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1227−28 (N.D. Cal. 2005)
26  (finding hourly rates of $210 and $345 to be reasonable).  The undersigned therefore recommends
27  awarding Plaintiffs' their requested attorneys' fees in full.
28

#### 4. Costs

Plaintiffs seek $420 in costs. Campbell's billing records reflect that Plaintiffs paid a $400 filing fee and $20 for service of process. *See* Campbell Decl. Ex. A at ECF pp. 6, 9.

ERISA authorizes an award of reasonable costs in an action to recover unpaid contributions. 29 U.S.C. § 1132(g)(2)(D). Civil Local Rule 54-3(a)(1) provides that an award of the clerk's filing fee is "allowable if paid by the claimant." The docket and the evidence that Plaintiffs have submitted reflect that the filing fee was paid. Plaintiffs' costs for service of process are also reasonable, and courts have routinely awarded costs of service in actions brought under § 1132(g). *See, e.g.*, *Central. Cal. IBEW/NECA Pension Trust v. Ozzimo Electric, Inc.*, No. C 13-03800 JSW, 2014 WL 1245059, at *5 (N.D. Cal. Mar. 25, 2014). The undersigned therefore recommends that Plaintiffs recover the full $420 that they request for costs.

## IV. CONCLUSION

For the reasons stated above, the undersigned recommends that Plaintiffs' Motion for Default Judgment be GRANTED IN PART, that Plaintiffs be awarded $6,261.02 in liquidated damages, $4,543.50 in attorneys' fees, and $420 in costs, for a total judgment against Steiny of $11,224.52.

The undersigned further recommends that the Court require Plaintiffs to serve a copy of this Report on Steiny, and withhold judgment until fourteen days after service to allow Steiny a final opportunity to respond. *See Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1016 (N.D. Cal. 2015) (noting that although 28 U.S.C. § 636(b) includes "no clear requirement" for such service, "the court normally requests that the moving party do so," but in that case would not require further expenditure of resources to complete international service before entering judgment). Any party may file objections to the recommendations of this Report within fourteen days of being served with a copy. *See* 28 U.S.C. § 636(b).

Dated: May 6, 2016

JOSEPH C. SPERO
Chief Magistrate Judge

12